```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA**

**v.**                              CRIMINAL ACTION NO. 2:06-00163

**ANTWONNE WHITE**

<u>MEMORANDUM OPINION AND ORDER</u>

On the defendant's Motion to Dismiss Indictment for Outrageous Governmental Conduct, filed on November 3, 2006, wherein the defendant contends that his attorney-client privilege was breached by the monitoring and recording of his telephone conversations from the jails in which he was incarcerated after his arrest on June 29, 2006, the court conducted an evidentiary hearing on December 11, 2006[1].  In addition, the court has received as evidence from the defendant a designation by him of the three telephone conversations on which he relies, all three of which were initiated by him from

---

[1] The defendant also filed on December 11, 2006, a document entitled Additional Grounds in Support of Defendant's Motion to Dismiss for Outrageous Governmental Conduct.  Because the "Additional Grounds" cover subject matter quite different from that set forth in the motion to dismiss filed November 3, 2006, the court will treat it separately on another occasion as if it were entitled Motion to Dismiss II.

the jails where he was incarcerated and were recorded. Two of them emanate from the South Central Regional Jail in West Virginia and one from the Carter County Detention Center in Kentucky.

I.

At the outset of the defendant's telephone call in each of those three instances, a recorded message from the jail warns the defendant and the recipient of the call that the conversation may be monitored and recorded. The message from the South Central Regional Jail also warns the parties to the call not to connect with additional parties. At the beginning of inmate calls from the South Central Regional Jail the following recorded message is heard by both the inmate making the call and the recipient of the call which begins with something to the effect that, "You have a collect call from . . . ," with the omission being completed by the inmate's statement of his name. The message then proceeds as follows:

> ... an inmate at the South Central Regional Jail. If you wish to accept this call do not attempt to connect with additional parties or this call may be disconnected. This call may be monitored and recorded at any time. To take the charge for this call dial 0. To block all calls from this prison press the pound key. If you will pay, dial 3 now. Go ahead.

See Response of the United States to Defendant's Motion to Dismiss Indictment for Outrageous Government Conduct - Exhibit 2.

A recorded message similar to this was given at the outset of each of the defendant's calls from the South Central Regional Jail.

With respect to the calls from the Carter County Detention Center, the recorded message is given immediately after the recipient of the call answers and is as follows:

> Hello, this is a collect call from (inmate's voice) an inmate from . . .  This call is subject to monitoring and recording.

Consequently, on each of the defendant's calls from the jail in which he was incarcerated following his arrest on June 29, 2006, he was warned that each such call was subject to monitoring and recording.  Notwithstanding the warning, the defendant had the recipient of the call to dial the telephone number of either his attorney or the private investigator engaged by his attorney in order that he could discuss with them matters pertaining to his case now before the court.  By doing so, he consented to the monitoring and recording of those calls and knowingly, voluntarily and intelligently waived the attorney-client privilege inasmuch as he knew that his calls were subject to being monitored and recorded and the contents disclosed to others such as jail and law enforcement

authorities.  See, generally, <u>United States v. Hammond</u>, 286 F.3d 189, 192 (4th Cir. 2002).  For this reason alone, the motion to dismiss is denied.

## II.

Moreover, on each of the three calls on which the defendant relies, the defendant placed the call to Marilyn Caldwell whom he describes as a friend and business associate.  In each instance he asks Caldwell to connect him with either his attorney, Harry Reinhart, or the private investigator, Donald Ray Venatter.  In the call from the Carter County Detention Center (found on an excerpt from ID-61), the defendant first speaks to Caldwell for about three and one-half minutes when at his request she connects him to his attorney, Harry Reinhart, to whom he speaks for about four minutes, after which the defendant concludes with Caldwell by speaking to her for another four and one-half minutes.  It is apparent that Caldwell is listening to the conversation between the defendant and his attorney at the time it ends as follows:

```
          Reinhart:      Bye, now.
          Defendant:     All right.  Hello?
          Caldwell:      Hello.
```

**The entirety of the exchange just quoted covers a period of three to four seconds and is smoothly done in normal voice tones without interruption.**

**With respect to one of the calls from the South Central Regional Jail (contained on CD ID-100 and designated as Court's Exhibit No. 1), the defendant calls Caldwell who, after a time, connects him at his request to attorney Reinhart. One of the matters they discuss is attorney Reinhart's interest in obtaining                                                                .   It is concluded by them that, although                            was not then known by the defendant, it could be obtained from                                                                   .  During the course of the conversation, Reinhart asks Caldwell, who was obviously listening to the conversation,                                       to obtain that information.  She agreed to do so.  Such an exchange with Caldwell occurred seamlessly during the conversation between the defendant and Reinhart, on two different occasions.**

**With respect to the call from the South Central Regional Jail (found on an excerpt from ID-88), the defendant initiated a call that is accepted by Caldwell to whom he speaks**

5

for about three and one-half minutes at which time she connects him as he requests in a three-way call with private investigator Venatter.  Venatter remains connected for about nine and one-third minutes.  During that portion of the call Venatter advises the defendant that he has learned that

.  As the conversation with the investigator ends, the following exchange takes place:

   12:59  Venatter:  All right.
   13:02  Defendant:  Yeah.
   13:03  Caldwell:  Yeah.

This exchange is for a period of four seconds and is conducted in a normal voice by each of the parties and occurs smoothly, with Caldwell on the line.  Shortly thereafter the following further exchange takes place:

   13:36  Caldwell:  But he's saying

                   .
   13:40  Defendant:  I don't know.
   13:41  Caldwell:  (Raising her voice) Because I was standing there.

It is apparent that Caldwell was listening to the defendant's conversation with the private investigator because she knew that he had just informed the defendant that

.  After the conversation with Venatter ended, Caldwell realized that the defendant did not remember what Venatter had just said.  That is why she stated,

.  When the defendant replied, "I don't know," she quickly injects "Because I was standing there," meaning she was listening to the conversation while Venatter was on the line.

It is clear from all of these exchanges that Caldwell is not, as the defendant testified, leaving the telephone during these calls and not listening again until the defendant, at the end of his conversation with his attorney or investigator, shouts through the telephone for her to return.  Rather, she is there listening throughout the conversation, ready to proceed immediately with the defendant once he has finished talking to his attorney or investigator and, if need be, join in the conversational exchange.

Indeed, Caldwell is seen to be an intimate part of the conversation involving the attorney where she is agreeing to seek out information from                    ; and she is also found to be listening quite carefully to the investigator so that she can

7

explain to the defendant what he misunderstood in that conversation.

Accordingly, a third party, Marilyn Caldwell, listened to all of these conversations as they were taking place.  For that reason alone the motion to dismiss is denied inasmuch as the conversations are deemed to have been published at the instance of the defendant and are not protected by the attorney-client privilege.

For each of the foregoing reasons, the motion to dismiss is denied.

The court understands that the United State's Attorney's office has not listened to any of the recordings of defendant's prison telephone conversations with his attorneys or his attorneys' investigator, although it may be that law enforcement officers have done so.  In order not to risk prejudicing the case of either the United States or the defendant by the unnecessary disclosure of matter that is claimed to be privileged (though the court finds it is not), the court ORDERS that the unredacted version of this order be filed under SEAL until the further order of the court, with the Clerk to forward a copy to the defendant and his counsel of record.  This redacted version, also prepared by the court, is ORDERED filed in the

public record and forwarded by the Clerk to counsel for both parties and to the defendant.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED: January 17, 2007

John T. Copenhaver, Jr.
United States District Judge